IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAUREEN K. CORNEAL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-19-3393 |
| DEBRA MCCURDY, *et al.*, | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Maureen K. Corneal ("Corneal" or "Plaintiff"), proceeding *pro se*, brings this employment discrimination action seeking prospective injunctive relief against Defendants Debra McCurdy, Kurt Schmoke, Maria Rodriguez, and Michelle Williams (collectively, "Defendants"), all in their official capacities as officers of Baltimore City Community College ("BCCC"). Corneal originally asserted unlawful discrimination (Count I) and retaliation (Count II) based on her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (Compl., ECF No. 1.) On April 20, 2020, this Court dismissed Corneal's retaliation claim (Count II) for failure to exhaust administrative remedies. (ECF No. 16.) Accordingly, the sole remaining count before this Court is Corneal's claim of age discrimination (Count I). Corneal has been permitted to engage in discovery to support her claim. Now pending is Defendants' Motion for Summary Judgment. (ECF No. 42.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion for Summary Judgment (ECF

No. 42) is GRANTED, and summary judgment shall be ENTERED in favor of Defendants on the sole remaining count (age discrimination) of Plaintiff's Complaint (ECF No. 1).

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). In 2014, Plaintiff Corneal was hired by Baltimore City Community College ("BCCC") as Vice President of Institutional Advancement, Marketing, and Research ("VP IAMR"). (Corneal Offer Letter, ECF No. 48-2.) Corneal began her employment with BCCC on June 2, 2014, when she was 52 years old. (*Id.*; Corneal EEOC Charge at 6, ECF No. 48-17 (noting Corneal's date of birth as April 7, 1962).) In her role as Vice President of Institutional Advancement, Marketing, and Research, Corneal supervised a team of approximately fourteen professionals, two creative agencies, and several vendors. (Corneal Position Description, ECF No. 48-29.) Corneal also was responsible for five areas of supervision: (1) institutional advancement; (2) the BCCC Foundation; (3) marketing and communications; (4) community and alumni relations; and (5) research. (*Id.*) In addition, five positions reported to Corneal as VP IAMR: (1) Director of Media and Community Relations; (2) Director of Marketing Communications; (3) Director of Development; (4) Director of Grant Development; and (5) Associate Vice President, Institutional Research, Effectiveness and Planning (created in 2015). (IAMR Organizational Chart, ECF No. 48-10.)

Corneal, an at-will Administrative Professional employee, was also a member of the president of BCCC's cabinet and executive staff and she reported directly to the president.

(Corneal Position Description, ECF No. 48-29; Dr. May Declaration ¶ 5, ECF No. 48-32.)  In September 2014, three months after Corneal began her employment, Dr. Gordon May became president of BCCC.  (Dr. May Declaration ¶ 3, ECF No. 48-32.)  On July 28, 2015, Dr. May evaluated Corneal for the 2014-2015 academic/fiscal year and gave her an evaluation of "Exceeds Standards."  (Corneal 2015 Evaluation, ECF No. 48-4.)  Corneal was also voted "Administrator of the Year" by BCCC in 2015.  (Administrator of the Year Award, ECF No. 48-5.)

I.   **BCCC creates the position of Associate Vice President of Institutional Research, Effectiveness, and Planning**

In 2015, upon recommendation from the Middle States Commission on Higher Education, BCCC created a position to oversee institutional research, effectiveness, and planning.  (Corneal Dep. Tr. at 29:9-31:12, ECF No. 42-6; Middle States Commission Report April 2015, ECF No. 42-39.)  The new position, Associate Vice President of Institutional Research, Effectiveness, and Planning would report directly to Corneal as VP of Institutional Advancement, Marketing, and Research.  (Corneal Dep. Tr. at 29:9-30:18, ECF No. 42-6; IAMR Organizational Chart, ECF No. 48-10.)  The Associate VP's responsibilities included, *inter alia*, leadership, management, institutional effectiveness, strategic planning and assessment, and research.  (Associate VP Position Description, ECF No. 42-21.)  On July 22, 2015, BCCC hired Dr. Nassim Ebrahimi to fill the Associate VP position.  (Ebrahimi Appointment Letter, ECF No. 42-20.)  Dr. Ebrahimi is approximately sixteen years younger than Plaintiff Corneal.  (Compl. ¶ 26, ECF No. 1.)

II.   **The 2016 Schaefer Center Report**

As a state-funded institution, BCCC is accountable to the Maryland General Assembly, which has most recently scrutinized BCCC's leadership, finances, and organizational structure due to declining enrollment.  (Corneal Dep. Tr. at 25:9-26:15, ECF No. 42-6; Schaefer Center Report, ECF No. 42-11.)  In November 2015, BCCC hired the Schaefer Center for Public Policy at the University of Baltimore pursuant to the Maryland General Assembly's requirement that BCCC "hire an outside consultant to conduct an operational review of the college." (Schaefer Center Report, ECF No. 42-11.)

After interviewing BCCC students and employees and analyzing data from BCCC and its peer institutions, the Schaefer Center issued its "Joint Chairman's Report" on August 1, 2016, which made twelve recommendations, including implementing "transformational leadership," aligning its budget "with realistic enrollment projections," engaging in a "top-down review of positions and staff," forging "meaningful relationships with key constituencies and partners," and rebuilding BCCC's brand.  (*Id.*)   The Schaefer Center Report also found that BCCC's finances were unsustainable "in the face of significant enrollment declines" and that BCCC "had failed to adjust its personnel levels to match the decline in enrollment."  (*Id.*)

### III.   Reorganizing BCCC's Senior Leadership Structure and Corneal's Resignation

During the summer of 2016, Dr. May, Dr. Todd Yeary, then-Chair of BCCC's Board, and Bryan Perry, then BCCC's General Counsel, began discussing the reorganization of BCCC's senior leadership structure based on the recommendations in the Schaefer Center Report.   (Dr. May Declaration ¶ 13, ECF No. 48-32; Dr. Yeary Decl. ¶ 9, ECF No. 48-34; June 14, 2016 Email from Dr. Yeary to Mr. Perry attaching Kirstaetter resume, ECF No. 42-38.)  Specifically, they discussed the possibility of hiring Dawn Kirstaetter, who previously

served as Deputy Mayor of Baltimore City for Health, Human Services, and Education, to work at BCCC.  (*Id.*)  They believed that hiring Ms. Kirstaetter would help BCCC to build strong partnerships with agencies in Baltimore City, including the mayor's office and Baltimore City Public Schools.  (Dr. May Declaration ¶ 16, ECF No. 48-32; Defs.' Resp. to Pl.'s First Set of Interrogatories, No. 5, ECF No. 42-12.)  As a result, Dr. May decided to restructure the Institutional Advancement, Marketing, and Research division, to terminate Plaintiff Corneal's employment, and to reassign her duties to Dr. Ebrahimi while aiming to hire Ms. Kirstaetter to address BCCC's need to build strategic partnerships.  (*Id.*)  Dr. May, Dr. Yeary, and Mr. Perry believed that Ms. Kirstaetter had stronger current business relationships with people in Baltimore City agencies than did Corneal.  (*Id.*; Corneal Dep. Tr. at 76:11-77:18, ECF No. 42-6.)

On August 8, 2016, Dr. May and Human Resources Executive Director Michelle Williams met with Corneal and told her that BCCC was "going in a different direction," and that she "need[ed] to resign or be terminated."  (Corneal Dep. Tr. at 89:11-18, ECF No. 42-6; Dr. May Declaration ¶ 17, ECF No. 48-32.)  Corneal resigned and received a severance payment of $10,830.00.  (Corneal Resignation Letter, ECF No. 48-6; Corneal Release of Claims, ECF No. 48-7; BCCC Acceptance of Corneal Resignation Letter, ECF No. 48-8.)  On August 19, 2016, Dr. Ebrahimi, then 38 years old, was appointed to the position of Interim Vice President of Institutional Advancement, Marketing, and Research for a period of six months, until February 2017.  (Ebrahimi Acting Capacity Appointment Letter, ECF No. 48-9; Ebrahimi Personnel Action Forms, ECF No. 48-39.)

Dr. Ebrahimi's salary was increased to $120,515 but was still below Corneal's starting salary of $138,410.  (*Id.*; Corneal Offer Letter, ECF No. ECF No. 48-2.)  In addition to serving as the Interim Vice President of Institutional Advancement, Marketing, and Research, Dr. Ebrahimi continued in her role as Associate Vice President of Institutional Research, Effectiveness, and Planning. (Dr. May Declaration ¶ 20, ECF No. 48-32.)

In November of 2016, Dr. May offered Ms. Kirstaetter the position of Interim Vice President of Institutional Advancement and Strategic Partnerships, which she began on December 5, 2016.  (Kirstaetter Appointment Letter, ECF No. 42-23.)  Funding for this position came from Corneal's former position of Vice President of Institutional Advancement, Marketing, and Research.  (Dr. May Declaration ¶ 22, ECF No. 48-32; Kirstaetter Personnel Action Form, ECF No. 48-40; Corneal Personnel Action Requisition Form, ECF No. 42-26.)

Dr. May renewed Dr. Ebrahimi's appointment as Interim Vice President of Institutional Advancement, Marketing, and Research from February 2017 to June 2017. (Ebrahimi Personnel Action Forms, ECF No. 48-39.)  On June 19, 2017, Dr. Ebrahimi resigned.  (Ebrahimi Resignation Letter, ECF No. 48-55.)  Also in June of 2017, BCCC conducted an initial search to fill Corneal's former position of Vice President of Institutional Advancement, Marketing, and Research.  (Perry Decl. ¶ 21, ECF No. 42-42; Email from Perry re VP IAMR position, ECF No. 42-45.)  However, with Ms. Kirstaetter taking on community and alumni relations on a permanent basis in July of 2017 and with Dr. Ebrahimi's resignation, Corneal's former position of Vice President of Institutional Advancement, Marketing, and Research was eliminated.   (Dr. May Declaration ¶ 27, ECF No. 48-32; BCCC Baseline and Progress Report, ECF No. 42-33; Email from Kirstaetter to Perry, ECF No. 42-47.)

IV.     **Corneal's EEOC Charge**

On December 2, 2016, Plaintiff Corneal filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Dr. May discharged her, then 54 years old, and replaced her with Dr. Ebrahimi, then 38 years old.  (EEOC Charge, ECF No. 48-17.)  On July 19, 2019, following a three-year investigation, the EEOC issued a finding of reasonable cause to believe that BCCC had discriminated against Corneal because of her age.  (EEOC Determination, ECF No. 48-19.)  Specifically, the EEOC found that "the record shows that [Corneal's] position did not change and was given to a younger individual following [Corneal's] discharge." (*Id.*)  On August 21, 2019, the EEOC denied BCCC's request for reconsideration.  (EEOC Denial of Reconsideration, ECF No. 48-21.)  After conciliation between BCCC and the EEOC failed, the EEOC issued Corneal a Right to Sue Letter on August 29, 2019.  (EEOC Notice of Failure to Conciliate, ECF No.48-18.)  On November 25, 2019, Corneal filed this action *pro se*, asserting one count of age discrimination (Count I) and one count of retaliation (Count II) and seeking prospective injunctive relief, including reinstatement, pursuant to *Ex parte Young*, 209 U.S. 123 (1908).  (Compl., ECF No. 1.)  Corneal filed suit against Dr. Debra McCurdy (BCCC's current president), Kurt Schmoke (current chair of BCCC's Board of Directors), Maria Rodriguez (BCCC's current General Counsel), and Michelle Williams (BCCC's former Executive Director of Human Resources), all in their official capacities.  (*Id.*)

On February 5, 2020, Defendants filed a Partial Motion to Dismiss, seeking dismissal of Corneal's retaliation claim (Count II) for failure to exhaust administrative remedies.  (ECF No. 12.)  This Court granted Defendants' Motion to Dismiss on April 20, 2020, and dismissed

Plaintiff's claim for retaliation.  (ECF No. 16.)  On June 3, 2021, Defendants filed the presently pending Motion for Summary Judgment, seeking entry of judgment in their favor on Plaintiff's sole remaining count of age discrimination (Count I).  (ECF No. 42.)  On August 24, 2021, Plaintiff filed a document titled "Plaintiff's Question for Chambers," posing several legal questions to the Court.  (ECF No. 46.)  The Court returned Plaintiff's document, noting that the Court cannot provide legal advice and enclosing the Court's "Instructions for Filing a Civil Action."  (ECF No. 47.)   Plaintiff filed her Opposition to Defendants' pending Motion on August 30, 2021.  (ECF No. 48.)

## STANDARD OF REVIEW

This Court is mindful of its obligation to liberally construe the pleadings of *pro se* litigants.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

Plaintiff Corneal's sole remaining count alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*[1]  Corneal seeks prospective injunctive relief, including reinstatement, pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

### I.    Defendants Schmoke, Rodriguez, and Williams

Defendants argue that Defendants Schmoke, Rodriguez, and Williams are entitled to summary judgment as a matter of law because they do not fall under the exception to Eleventh Amendment immunity created by *Ex parte Young*, 209 U.S. 123 (1908).  Maryland has not waived its immunity in federal court to suits brought under the ADEA and the ADEA does not abrogate Eleventh Amendment sovereign immunity.  *See McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) (citing *Bd. of Tr.'s of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001)).  Eleventh Amendment sovereign immunity also extends to Maryland's agencies and Maryland's agents in their official capacities.  *Id.*  Pursuant to the exception created by *Ex parte Young*, however, the Eleventh Amendment does not bar suit against state agents acting in their official capacities when a plaintiff seeks prospective injunctive relief.  209 U.S. 123 (1908); *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 476 (4th Cir. 2005).

---

[1] While Plaintiff makes reference in Count I to the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-606, it is not clear whether she is also seeking relief under this Maryland analogue to the ADEA.  (*See* Compl. at 20, ECF No. 1.)  In any event, the Maryland Fair Employment Practices Act adopts the same substantive standards and burden of proof as Title VII, and thus, the ADEA.  *See Limes v. American Fed'n of State Cnty. & Mun. Emps. Union (Local 2250)*, No. PX-19-03225, 2020 WL 1914806 at *2 (citing *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 498 n.2 (D. Md. 2019)).  Accordingly, even if Plaintiff asserted a claim under Maryland's FEPA, it would fail as a matter of law for the same reasons that Plaintiff's claim for age discrimination fails as a matter of law under the ADEA.

The *Ex parte Young* exception, however, "creates only a 'narrow' exception to the Eleventh Amendment." *Just Puppies, Inc. v. Frosh*, 438 F. Supp. 3d 448, 484 (D. Md. 2020) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L.Ed.2d 605 (1993)).  State employees are amenable to suit under this exception if there exists "'a special relation' between the state official being sued and the challenged action." *Id.* (quoting *Wright v. North Carolina*, 787 F.3d 256, 261-62 (4th Cir. 2015)).  This special relationship exists "where the state official 'has some connection with the enforcement of the act.'" *Id.* (quoting *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (internal quotations omitted).

In this case, Plaintiff Corneal alleges that all Defendants "hold the authority to effect prospective relief…regarding all employment matters." (Compl. ¶ 10, ECF No. 1.)  However, the specific relief sought by Corneal, reinstatement to her position, is subject to the authority of BCCC's President, Defendant Debra McCurdy, only.  *See* Md. Code Ann., Educ. §§ 16-506(4), (6).  Indeed, Plaintiff acknowledges that "Maryland law gives the President of BCCC the authority to hire employees…and carry out other duties as authorized by the Board of Trustees." (Pl.'s Opp'n at 34, ECF No. 48.)  It is therefore undisputed that the Defendant Kurt Schmoke, as the current chair of BCCC's Board of Directors, the Defendant Maria Rodriguez as BCCC's current General Counsel, and the Defendant Michelle Williams as BCCC's *former* Executive Director of Human Resources, do not have authority to reinstate Corneal to her former position and therefore do not have the requisite "special relation" to the challenged action.  *See Just Puppies, Inc.*, 438 F. Supp. 3d at 485 (dismissing defendants because they did not fall within the *Ex parte Young* exception).  Accordingly, Defendants

Schmoke, Rodriguez, and Williams are entitled to summary judgment as a matter of law as they are not proper Defendants under the *Ex parte Young* exception to Eleventh Amendment immunity.

## II.    Plaintiff's Age Discrimination Claim

Generally speaking, a plaintiff may avert summary judgment and establish a claim of intentional discrimination using "ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Western Elec. Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir. 1983). Alternatively, a plaintiff may proceed under the proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny, under which the employee, after establishing a *prima facie* case of discrimination, must demonstrate that the employer's proffered nondiscriminatory reason for the challenged employment action is in fact a pretext for discrimination. *Id.* Although *McDonnell Douglas* was a Title VII case, the United States Court of Appeals for the Fourth Circuit has consistently applied the *McDonnell Douglas* burden-shifting test to claims brought under the ADEA. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1314 (4th Cir. 1993).

In this case, the Plaintiff has not presented any direct evidence of discrimination. Indeed, Plaintiff testified that no one at BCCC ever mentioned her age or that she was being asked to resign because of her age. (Corneal Dep. Tr. at 92:20-22, 120:14-21, 121:3-4, ECF No. 42-6.) Therefore, this Court must assess her claims under the *McDonnell Douglas* burden-shifting test. Under *McDonnell Douglas* test, a plaintiff must first present enough evidence to make a *prima facie* case of discrimination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000).

To establish a *prima facie* case, the plaintiff must show that she: (1) is a member of a protected class, *i.e.*, is at least 40 years old; (2) suffered an adverse employment action; (3) was at the time performing her job duties at a level that met her employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  *See Hill v. Lockhead Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).  If the plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory reason."  *Reeves*, 530 U.S. at 142 (citing *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Finally, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Id.* (quoting *Burdine*, 450 U.S. at 253).

The parties do not dispute that Plaintiff has established the first three elements of a *prima facie* case of age discrimination:  she is a member of a protected class based upon her age of fifty-four; she was performing her duties as Vice President of Institutional Advancement, Marketing, and Research at a level that met her employer's legitimate expectations; and she was asked to resign or be terminated by BCCC's then-president Dr. Gordon May.

However, Defendants argue that Corneal cannot satisfy the fourth element of her *prima facie* case of age discrimination because she was not permanently replaced by a substantially younger employee.   Corneal argues that she has proven this element of the *prima facie* case because Dr. Ebrahimi, then 38 years old, was appointed to the position of Interim Vice President of Institutional Advancement, Marketing, and Research. (Pl.'s Opp'n at 12-14, ECF

No. 48.)  This fact alone is insufficient, as the record shows that Dr. Ebrahimi did not replace Corneal in her position but rather took on the responsibilities of Corneal's position on a temporary basis while BCCC underwent a restructuring of the Institutional Advancement, Marketing, and Research division.  (*See* Ebrahimi Acting Capacity Appointment Letter, ECF No. 48-9; Ebrahimi Personnel Action Forms, ECF No. 48-39; Dr. May Declaration ¶ 20, ECF No. 48-32.)

"A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Hudock v. Kent Cty. Bd. Of Educ.*, No. CCB-14-2258, 2015 WL 1198712, at *14 (D. Md. Mar. 16, 2015) (citing *Grosjean*, 349 F.3d at 336)).  An individual "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).  Having other employees present to handle various tasks a plaintiff may have performed does not show that an individual was "replaced." *Transamerica Ins. Fin. Corp.*, 854 F. Supp. 393, 398 (D. Md. 1993), *aff'd*, 27 F.3d 563 (4th Cir. 1994).

The Plaintiff has not shown that one individual person was hired or took over all of her duties.  Instead, the undisputed record reflects that, due to restructuring recommended by the Schaefer Center Report, Dr. May reorganized the duties and responsibilities of Corneal's position.  (Dr. May Declaration ¶ 13, ECF No. 48-32; Dr. Yeary Decl. ¶ 9, ECF No. 48-34; June 14, 2016 Email from Dr. Yeary to Mr. Perry attaching Kirstaetter resume, ECF No. 42-38.)  As a result, Dr. Ebrahimi and Ms. Kirstaetter shared Corneal's former responsibilities for less than a year as Interim Vice Presidents before Dr. Ebrahimi herself resigned and Ms.

Kirstaetter took on a new Vice President role. (Ebrahimi Acting Capacity Appointment Letter, ECF No. 48-9; Ebrahimi Personnel Action Forms, ECF No. 48-39; Dr. May Declaration ¶ 22, ECF No. 48-32; Kirstaetter Appointment Letter, ECF No. 42-23; Kirstaetter Personnel Action Form, ECF No. 48-40; Corneal Personnel Action Requisition Form, ECF No. 42-26.) Indeed, by August of 2017, Corneal's former position of Vice President of Institutional Advancement, Marketing, and Research was eliminated altogether.  (Dr. May Declaration ¶ 27, ECF No. 48-32; BCCC Baseline and Progress Report, ECF No. 42-33; Email from Kirstaetter to Perry, ECF No. 42-47.)  Accordingly, it is undisputed that Corneal was not replaced by someone substantially younger than she because that position was restructured and ultimately eliminated.

Whether a plaintiff seeks to prove discrimination on the basis of direct evidence, or through the *McDonell Douglas* framework, it remains the plaintiff's ultimate burden to prove that her age was the but-for cause of the alleged adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  Corneal relies only on the EEOC's Determination finding age discrimination and that "the record shows that [Corneal's] position did not change and was given to a younger individual following [Corneal's] discharge." (EEOC Determination, ECF No. 48-19.)  However, the Fourth Circuit and this Court have consistently held that "conclusory findings by the EEOC 'are not sufficiently probative to create a genuine issue of material fact.'" *Toney v. Powercon Corp.*, Civil Case No. SAG-19-0405, 2020 WL 758242, at *11 (D. Md. Feb. 14, 2020) (quoting *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988)).  Indeed, the EEOC Determination in this case provides no factual basis for the EEOC's finding, rendering it of little probative value. *See id.* (granting summary judgment for

defendant, noting that EEOC determination did not describe "the information obtained during the [EEOC's] investigation," leaving the Court "utterly unable to evaluate the factual basis for the EEOC's finding"). Consequently, Corneal has not generated any genuine issues of material fact with respect to her age discrimination claim, and it fails as a matter of law.

### III.   Pretext

Alternatively, even if Corneal could establish a *prima facie* case of discrimination, she cannot prevail under this claim because Defendants have put forward legitimate, nondiscriminatory reasons for their action, and Corneal has not carried her burden of showing such reasons were mere pretext for discrimination. In fact, Corneal has made no effort to establish that any of Defendants' actions were in any way discriminatory.

Defendants have presented clear evidence that: Dr. May asked Corneal to resign because BCCC was going in "another direction," which involved the reorganization of the leadership structure and the redistribution of the funds for Corneal's position to create different Vice President positions. (Corneal Dep. Tr. at 89:11-18, ECF No. 42-6; Dr. May Declaration ¶ 17, ECF No. 48-32; Corneal Resignation Letter, ECF No. 48-6; Corneal Release of Claims, ECF No. 48-7; BCCC Acceptance of Corneal Resignation Letter, ECF No. 48-8.) Based on the recommendations in the Schaefer Center Report, Dr. May, Dr. Yeary and Bryan Perry discussed the possibility of hiring Dawn Kirstaetter, who previously served as Deputy Mayor of Baltimore City for Health, Human Services, and Education, to work at BCCC because they believed that hiring Ms. Kirstaetter would help BCCC to build strong partnerships with agencies in Baltimore City, including the mayor's office and Baltimore City Public Schools. (Dr. May Declaration ¶¶ 13, 16 ECF No. 48-32; Dr. Yeary Decl. ¶ 9, ECF

No. 48-34; June 14, 2016 Email from Dr. Yeary to Mr. Perry attaching Kirstaetter resume, ECF No. 42-38; Defs.' Resp. to Pl.'s First Set of Interrogatories, No. 5, ECF No. 42-12.)  Dr. May decided to restructure the Institutional Advancement, Marketing, and Research division, to terminate Plaintiff Corneal's employment, and to reassign her duties to Dr. Ebrahimi while aiming to hire Ms. Kirstaetter to address BCCC's need to build strategic partnerships.  (*Id.*) Dr. May, Dr. Yeary, and Mr. Perry believed that Ms. Kirstaetter had stronger current business relationships with people in Baltimore City agencies than did Corneal.  (*Id.*)  Corneal testified that her business relationships with Baltimore City agencies in the 1990s had not been maintained after 1999 (Corneal Dep. Tr. at 76:11-77:18, ECF No. 42-6); and with Ms. Kirstaetter taking on community and alumni relations on a permanent basis in July of 2017 and with Dr. Ebrahimi's resignation, Corneal's former position of Vice President of Institutional Advancement, Marketing, and Research was eliminated.   (Dr. May Declaration ¶ 27, ECF No. 48-32; BCCC Baseline and Progress Report, ECF No. 42-33; Email from Kirstaetter to Perry, ECF No. 42-47.)

In the face of these reasons proffered by Defendants, Corneal makes no showing that Defendants' explanations are "'unworthy of credence'" nor does she "offer[ ] other forms of circumstantial evidence sufficiently probative of" the alleged discrimination.  *See Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (internal quotations and citations omitted).  Indeed, the Fourth Circuit has "recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."  *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 277 (4th Cir. 1995) (citing *EEOC v. Clay Printing, Co.*, 955 F.2d 936, 946 (4th Cir. 1992)).  There is simply

no evidence in this case suggesting that Defendants terminated Corneal because of her age in violation of the ADEA.  Accordingly, even if Corneal could establish her *prima facie* case for age discrimination, which she cannot, she also cannot establish that the Defendants' provided reasons for their actions were pretextual.  Her claim for age discrimination fails as a matter of law and summary judgment shall be entered in favor of all the Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 42) is GRANTED, and summary judgment shall be ENTERED in favor of Defendants on the sole remaining count (age discrimination) of Plaintiff's Complaint (ECF No. 1).

A Separate Order follows.


Dated: September 15, 2021


_____/s/_____
Richard D. Bennett
United States District Judge